UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CECILIA MONTERO and ANABEL RODRIGUEZ, on behalf of themselves and all other similarly situated persons, known and unknown | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 14 cv 9053 |
| v. | ) ) | Magistrate Judge Susan E. Cox |
| JPMORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A., | ) ) ) | |
| Defendants. | ) | |

**Order**

For the reasons provided, Cecilia Montero's ("Montero's" or "Plaintiff's") motion to vacate the order compelling Anabel Rodriguez ("Rodriguez") to arbitration (Dkt. No. 78) and Montero's motion to join Rodriguez as a plaintiff (Dkt. No. 78) are denied. Montero's motion to file a third amended complaint (Dkt. No. 78) is granted.

**Procedural Background**

Montero filed this class action suit against JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("Chase") alleging that Chase failed to pay overtime wages at the rate required under the Fair Labor Standards Act 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1, *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/ 1 *et seq.* ("IWPCA"). (Dkt. No. 1).

On January 14, 2015, Montero filed a first amended complaint (Dkt. No. 20), which alleged the same violations of law, but added Rodriguez as a plaintiff. Montero and Rodriguez were given leave to file a second amended complaint on February 13, 2015, alleging that Chase

1

violated the IWPCA by making unauthorized deductions from their agreed-upon wages. (Dkt. Nos. 25, 29, 31).

Chase filed a motion to dismiss the second amended complaint (Dkt. No. 32) on March 2, 2015. Simultaneously, Chase moved to compel arbitration with respect to Rodriguez, arguing that Rodriguez was subject to a Binding Arbitration Agreement ("BAA") with Chase. (Dkt. No. 32, 33 at 11-15). Notably, the BAA waived Rodriguez's right to arbitrate any claims she might have on a class basis. Plaintiffs initially agreed to dismiss Rodriguez's claims "in light of the precedent in the area of forced arbitration." (Dkt. No. 41 at 1). On May 8, 2015, however, Plaintiffs filed a supplemental motion, asking the district court to deny Chase's motion to compel arbitration; that motion was premised on "Rodriguez subsequently receiv[ing] a Settlement Claim Form from Chase in the matter of *Hightower, et al. v. JPMorgan Chase Bank, N.A., et al.*, U.S.D.C. for the C.D. Cal. (Case No. 11-cv-1802), which identified [Rodriguez] as a class member and sought to resolve her wage claims." (Dkt. No. 78 at 3; Dkt. No. 48 at 1-2.) Plaintiffs argued that Chase's decision not to adhere to the BAA in the *Hightower* matter should render Chase unable to compel individual arbitration of her claims in this matter. (Dkt. No. 48 at 1-2.) This is the only argument put forward by Plaintiffs on the enforceability of the BAA during the pendency of Chase's motion to dismiss; they never raised the issue that the BAA's prohibition on collective actions might run afoul of the National Labor Relations Act or any other federal statute. On January 15, 2016, the district court entered an order compelling arbitration of Rodriguez's claims.[1] (Dkt. No 58 at 1, 4).

While Chase's motion to dismiss was pending before the district court, a case bearing on the enforceability of arbitration agreements that prohibit collective actions was winding its way

---

[1] On January 25, 2016, the parties jointly consented to have this Court conduct any and all further proceedings in this case in accordance with the provisions of Title 28 U.S.C. §636(c). (Dkt. No. 62).

through the Seventh Circuit. In *Lewis v. Epic Systems Corp.,* 2015 WL 5330300, at *1-2 (W.D. Wis. Sept. 11, 2015), the court decided to follow the National Labor Relation Board's conclusion that "an employer violates the National Labor Relations Act by entering into individual arbitration agreements that include a prohibition on collective actions by employees." *Id.* (citing *In re D.R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (2012)). The very same day that the district court's opinion issued, the defendant in *Lewis* filed a notice of interlocutory appeal before the Seventh Circuit. *Lewis*, 3:15-cv-0082-bbc, Dkt. No. 55 (W.D. Wis. Sept. 11, 2015). By the time the district court in the instant suit had issued its opinion, the *Lewis* appeal had been fully briefed (including several *amicus* briefs), and oral argument was scheduled before the Seventh Circuit. *See Lewis v. Epic Systems Corp.*, No. 15-cv-2997, Dkt Nos. 13-16, 19, 21, 23, 30, 31). On May 26, 2016, the Seventh Circuit affirmed the district court's decision in *Lewis*, holding that arbitrations clauses that prohibit collective actions by employees violate the NLRA, and that "[n]othing in the [Federal Arbitration Act] saves the ban on collective action." *Lewis v. Epic Systems Corp.*, 823 F.3d 1147, 1161 (7th Cir. 2016).

Montero filed the instant motion on September 1, 2016, asking this Court to vacate the order entered on January 15, 2016 (Dkt. No. 58) based upon the subsequent binding precedent issued by the Seventh Circuit Court of Appeals in *Lewis*. (Dkt. No. 78). Montero alternatively moved for leave to join Rodriguez as a plaintiff pursuant to Fed. R. Civ. P. 20(a)(1) (Dkt. No. 78). On the same date, Plaintiff filed a motion for leave to file a third amended complaint (Dkt. No 78), seeking to clarify her FLSA and IMWL claims and seeking to add a new IWPCA claim for untimely payments.

## Discussion

### 1. Motion to vacate an order under Fed. R. Civ. P. 60(b)(6)

The Court first considers Montero's motion to vacate an order under Fed. R. Civ. P. 60(b)(6). Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; (6) any other reason justifying relief from the operation of the judgment.

Montero seeks relief under Rule 60(b)(6), the catch-all provision. Relief from a final judgment or order under Rule 60(b) is "an extraordinary remedy and is granted only in exceptional circumstances." *C.K.S. Engineers v. White Mountain Gypsum*, 726 F.2d 1202, 1204-05 (7th Cir. 1984). This principle is rooted in a "strong policy favoring the finality of judgments." *Lee v. Village of River Forest*, 936 F.2d 976 (7th Cir. 1991) (quoting *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir. 1986). The Seventh Circuit has indicated that a change in the law after entry of judgment does not, by itself, justify relief under Rule 60(b). *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680 (7th Cir. 2014) (citing *McNight v U.S. Steel Corp.*, 726 F.2d 333, 336 (7th Cir. 1984)). Indeed, the Supreme Court has noted that "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997).

Montero argues that since the district court rendered its decision compelling arbitration, the Seventh Circuit in *Lewis* has decided that arbitration agreements mandating individual action, like the one binding Rodriguez, are unenforceable because they preclude all collective or class

action, violating Section 7 and 8 of the National Labor Relations Act ("NLRA"). (Dkt. 78 at 3); *see Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1154 (7th Cir. 2016). As discussed above, the Seventh Circuit in *Lewis* further held that the Federal Arbitration Act ("FAA") does not conflict with the NLRA, and thus does not mandate enforcement of the individual arbitration process. *See* 823 F.3d at 1157. Montero points out that the individual Arbitration Agreement signed by Rodriguez contains identical class waiver provisions to the agreement the Seventh Circuit deemed unlawful in *Lewis*. (Dkt. No. 78 at 5-6). Montero argues that this subsequent change in law constitutes an extraordinary circumstance that justifies granting relief under Rule 60(b)(6). (*Id.* at 4). (Dkt. No. 78 at 4).

The Court rejects Montero's arguments. In the Seventh Circuit, a change in law does not constitute extraordinary circumstances for the purposes of a motion brought pursuant to Rule 60(b)(6). *See Kathrein*, 752 F.3d at 690. *Norgaard v. DuPuy Orthopaedics, Inc.*, 121 F.3d 1074 (7th Cir. 1997), is instructive. In that case, the defendants won summary judgment on a federal preemption question in a tort case. *Id.* at 1075. Two months after the district court entered judgment, the Supreme Court issued an opinion that "furnished the [plaintiffs] with arguments they could have used" to challenge the defendants' motion for summary judgment. *Id.* Plaintiffs had failed to appeal the district court's ruling for summary judgment or file a motion for reconsideration under Federal Rule of Civil Procedure 59(e); as a result, they filed a motion under Rule 60(b). *Id.* The district court denied that motion, and the plaintiffs appealed. *Id.* The Seventh Circuit affirmed the district court's decision, reasoning that:

> Litigants who want to take advantage of the possibility that the law may evolve—or who seek to precipitate legal change—must press their positions while they have the chance. If the law of the circuit is against a litigant . . . , the party still may appeal and ask the court to modify or overrule the adverse decision, or ask the Supreme Court to reverse the court of appeals. The [plaintiffs] could have

5

> made the same arguments that the [petitioners made in the Supreme Court case plaintiffs relied on in their 60(b)(6) motion]. The briefs in that case were readily available. Before filing suit on the [plaintiffs'] behalf, their lawyer presumably planned some way to counter the defendants' inevitable [preemption argument]; they were welcome to try out these arguments in our court. Litigants who acknowledge that the circuit's law is adverse to them and candidly ask for revision based on new arguments, or who seek to preserve an older argument for a higher tribunal, well serve both their clients' interests and the administration of justice.

*Id.* at 1077-1078.

The same is equally true here. While Montero is correct that the weight of legal authority was against her position at the time Chase's motion was filed, she had an opportunity to press the prevailing argument in *Lewis*, and chose not to do so. In fact, she did not raise the argument that the NLRA precludes enforcement of Rodriguez's BAA in her response to Chase's motion at all. Montero failed to do so even though she knew (or should have known)[2] that a litigant had successfully argued that a clause nearly identical to the BAA was unenforceable, and that an appeal of that decision was pending *in this circuit while Chase's motion was pending*.[3] At the very least, Montero could have petitioned to have the district court stay its ruling on Chase's motion until the Seventh Circuit issued the *Lewis* decision; she did not. While this Court is sympathetic to Montero's predicament, given the Seventh Circuit's divergence from much of the existing case law at the time *Lewis* was appealed, that sympathy does not excuse her from pressing all viable arguments available to her, and ensuring that she was aware of potential changes to binding precedent that might be on the horizon in this circuit. The fact that *Lewis* was

---

[2] Plaintiff argues that she was unaware of the *Lewis* decision because "Plaintiff is not in the practice of reviewing every district court opinion issued throughout the country, nor can reasonably be expected to do so when no briefs or arguments requiring such extensive research are pending." The Court is not requiring Plaintiff to be aware of every opinion issued throughout the country, but does believe that Plaintiff should have been aware of pending appeals in this circuit that may create binding legal precedent with potentially significant ramifications on her case.

[3] In fact, this was not the first time that district courts in this circuit had ruled in a manner consistent with the holding in *Lewis*. *See Herrington v. Waterston Mortgage Corp.*, 993 F. Supp. 2d 940, 943-46 (W.D. Wis. 2014). As such, Plaintiff should have been aware of the potential for a split among the district courts in this circuit, and could have pressed the Seventh Circuit to resolve that split.

6

decided since the district court issued its ruling simply does not rise to the level of "extraordinary circumstances" necessary to grant a motion pursuant to Rule 60(b)(6). As such, this Court denies Montero's motion to vacate an order under Rule 60(b)(6).

## 2. Motion for leave to join under Fed. R. Civ. P. 20(a)(1)

Montero argues that now that the Seventh Circuit has determined this type of Arbitration Agreement is unenforceable in *Lewis*, Rodriguez should be permitted to continue to pursue her claims in the forum in which she originally filed them and to preserve her date of original filing. (Dkt. No. 78 at 4). The Plaintiffs have argued that this motion should be granted pursuant to Rule 20(a)(1) as a potential alternative to the Rule 60(b)(6) motion, but have provided no justification or analysis regarding the grounds for a motion under Rule 20(a)(1). From this Court's review, it appears that the "alternative" Rule 20(a)(1) motion is nothing more than a reiteration of the Plaintiffs' 60(b)(6) arguments. For the reasons stated above, this Court denies Montero's motion for leave to join under Rule 20(a)(1).

## 3. Motion to file a third amended complaint under Fed. R. Civ. P. 15(a)

The Court now considers Montero's motion to file a third amended complaint. Federal Rule of Civil Procedure 15(a) states that leave to amend a complaint "shall be freely given when justice so requires." However, the district court need not allow an amendment when there is undue delay, bad faith, undue prejudice, or when the amendment would be futile. *Life Plans, Inc. v. Security Life of Denver Ins., Co.,* 800 F.3d 343, 357 (7th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962)). "[W]hile a court may deny a motion for leave to file an amended complaint, such denials are disfavored." *Bausch v. Stryker Corp.*, 630 F. 3d 546, 562 (7th Cir. 2010). The objective of this liberal standard is "to decide

cases fairly on their merits, not to debate finer points of pleading where opponents have fair notice of the claim or defense." *Id.* (citing Fed. R. Civ. P. 8(e)).

Chase contends that Montero's motion to file a third amended complaint should be denied because: 1) Montero unduly delayed seeking to amend her complaint for the third time; 2) allowing Montero's late amendment would prejudice Chase; 3) the amendment is futile; and 4) Montero's request is brought in bad faith. (Dkt. No. 93 at 6). The Court considers each argument in turn.

### A. Undue Delay and Undue Prejudice

The Seventh Circuit has noted, delay alone is usually an insufficient ground to warrant denial of a leave to amend; rather, "[d]elay must be coupled with some other reason;" typically, that reason is "prejudice to the non-moving party." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793-93 (7th Cir. 2004).

Montero argues that although the original Complaint was filed in November 2014, the parties engaged in extensive briefing on the motion to dismiss and the district court did not issue a decision until January 15, 2016. (Dkt. No. 78. at 8). During that time, all action was stayed. (*Id.*) This motion to amend was filed on September 1, 2016, six months before the close of discovery on March 7, 2017, and before any depositions have occurred. (*Id.*) Hence, Montero contends that allowing Montero's amendments do not prejudice Chase in any way.

Chase responds that Montero offers no reason for this two-year delay in raising these claims for the first time. (Dkt. No. 93 at 1). Further, Chase argues that it would be substantially prejudiced if Montero's motion was granted because Chase would need to "redo the past two years of work" (*Id.*) and "revamp its discovery efforts." (Dkt. No. 93 at 10).

Chase initially cites *Sommerfield v. City of Chicago* in support of denying the motion for undue delay, misstating the findings of the case. (Dkt. No. 93 at 8). Chase subsequently filed an

amended response removing all reference to *Sommerfield*. (Dkt. No. 117). However, *Sommerfield* is indeed apposite. In *Sommerfield*, the district court found that the magistrate judge's denial of plaintiff's motion to amend on grounds of undue delay and prejudice to be in error. *Sommerfield v. City of Chicago*, No. 06 C 3132 WL 4542954, at *4 (N.D. Ill. Apr. 29, 2008). The district court reasoned that "although motions to dismiss [had] been filed and the case [was] almost two years old, no summary judgment motions had been filed, no trial date had been set, motions to enforce discovery had been filed, discovery extensions had been granted, and fact discovery was not set to close for another month." *Id.* at *3. The district court also determined that plaintiff's knowledge about the claims earlier in the litigation was not sufficient grounds for finding undue delay. The district court held that "[a]bsent prejudice to the [defendant], delay is not so grievous as to place the request for leave to amend outside the realm of requests that should be liberally granted." *Id.* at *4.

Here, this matter is in an earlier stage of litigation than *Sommerfield*. Montero filed the motion on September 1, 2016, approximately six months after the start of discovery, almost two months before the original discovery deadline of October 28, 2016, and six months before the extended discovery deadline of March 7, 2017. (Dkt Nos. 67, 78, 84). Similar to the findings in *Sommerfield*, even if Montero knew or should have known about the claims earlier, that is not sufficient grounds to find undue delay absent substantial prejudice. "[R]evamp[ing] its discovery efforts" months before discovery is to close is not so prejudicial as to justify denying the motion on the grounds of undue prejudice or delay. *See Chapman v. Wagener Equities, Inc.*, No 09 C 07299, 2012 WL 62144597, at *3 (N.D. Ill. Dec. 13, 2012) (granting leave to file an amended complaint over two years after the initial complaint had been filed, after discovery had been closed, and finding no undue prejudice to the defendant even if additional discovery would

9

be required). Thus, this Court finds that Montero did not unduly delay filing her request, and Chase will not suffer undue prejudice as the result of the amendment.

**B. Futility**

"District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F3d 865, 869 (7th Cir. 2013). When the basis for denial is futility, the Court applies Rule 12(b)(6) to ascertain whether the amended complaint fails to state a claim for relief. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1085 (7th Cir. 1997). Under the liberal rules of federal notice pleading, a complaint may only be dismissed if it appears that a plaintiff can prove no set of facts in support of her claims that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The complaint must "state a claim for relief that is plausible on its face." *Lodhotz v. York Risk Servs. Group, Inc.,* 778 F.3d 635, 639 (7th Cir. 2015) quoting *Bell Atl. Corp. Twombly*, 550 U.S. 544, 570 (2007)). Further, a "plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamoyo v. Blagojevich*, 526 F. 3d 1074, 1081 (7th Cir. 2008) (internal quotation omitted). The Court must accept all well-pleaded allegations as true and draw all possible inferences in plaintiff's favor. *Id.* Mere legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**1. FLSA and IMWL claims**

Chase argues that Montero's proposed amended complaint does not plead sufficient facts in support of her FLSA and IMWL claims to withstand a motion to dismiss under Rule 12(b)(6). (Dkt. No. 93 at 11-15.) In her third amended complaint, Montero alleges that she and other members of the putative class "frequently worked 'off the clock' overtime hours, including, but

not limited to, their uncompensated lunch time and / or in the evenings," and "were required to enter time for a lunch break, for which they would not be paid, whether or not they actually performed work during lunch or in the evenings." (Dkt. No. 78-1 at 5-6) Additionally, Montero alleges, "Defendants were aware of this 'off the clock' overtime work, but failed to compensate Plaintiffs and other members of the Plaintiff Class and Collective accordingly." (*Id.*) Chase argues that to survive a motion to dismiss, Montero must provide "concrete" factual allegations, such as examples or estimates of unpaid time and a description of the nature of the work performed during those times. (Dkt. No. 93 at 16.)

In response, Montero points out that the district court denied Chase's motion to dismiss the second amended complaint with similar arguments about the FMLA and IMWL claims, and the third amended complaint provides even more details than the second amended complaint. (Dkt. No. 109 at 13). Indeed, as Judge Kendall states in her opinion, "[a]n FLSA plaintiff is not required to forecast evidence or make a case against the defendant, but need only provide enough details to give the defendants fair notice of the claim and show that the claim is plausible."[4] (Dkt. No 58 at 7). Under the liberal federal notice pleading standards, Montero is not required to allege specific facts for each hour of work as Chase asserts. *See Victoria v. Alex Car, Inc.,* No. 11 C 9204, 2012 WL 1068759, at *5 (N.D. Ill. Mar. 29, 2012) (holding that "the court finds that there is no rule of law that requires Plaintiffs to allege their hourly wage, the dates on which the alleged violations took place, or the specific tasks they performed off the clock"); *Nehmelman v. Penn Nat. Gaming, Inc.,* 790 F. Supp. 2d 787, 796-97 (N.D. Ill. 2011) (rejecting the argument that plaintiffs must include information in their complaint as to who informed the employees of the "off the clock" policy, whether anyone complained to a supervisor, how many extra hours

---

[4] "The FLSA and IMWL claims are considered together because IMWL incorporates FLSA standards by reference." *DeMarco v. N.W. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510896, at *3 (N.D. Ill. Aug. 10, 2011) (citing *Condo v. Sysco Corp.*,1 F3d 599, 601 (7th Cir. 1993)).

11

they worked each week without pay, the nature of the extra work, or how employees recorded their time). This Court finds that Montero has pled facts sufficient to state claims under the FLSA and IMWL, to give Chase fair notice of the claims, and to show the claims are plausible.

## 2. IWPCA claim

To state a claim for untimely payment of wages under the IWPCA, a plaintiff "must plead that wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Brown v. Club Assist Road Services U.S., Inc.*, No. 12 C 5710, 2013 WL 5304100, at *8 (N.D. Ill. Sept. 19, 2013) (internal citations omitted). To plead the existence of an agreement or a contract, plaintiff "does not need to plead all contract elements if she can plead facts showing mutual assent to the terms that support the recovery." (*Id.*) "[E]mployers and employees can manifest their assent to condition of employment by conduct alone." (*Id.*) In the third amended complaint, Montero alleges that she had an agreement with Chase for the payment of wages, referring to Chase's "Retail Mortgage Incentive Plan" as a memorial of this agreement. (Dkt. No. 78-1 at 31.) Chase argues that the "Retail Mortgage Incentive Plan" does not constitute an agreement because there is language in the plan stating, "No participant shall have any contractual right to payment under the Plan." (Dkt No. 93 at 18, citing Dkt No. 33-3, Ex. C). However, as Montero points out, Chase is confusing a contract for an agreement. The Illinois Administrative Code ("Code") defines an "agreement" under the IWPCA as:

> the manifestation of mutual assent on the part of two or more persons. An agreement is broader than a contract and an exchange of promises or any exchange is not required for an agreement to be in effect. An agreement may be reached by parties without the formalities and accompanying legal protections of a contract and may be manifested by words or by any other conduct, such as past practice. **Company policies and policies in a handbook create an agreement even when the handbook or policy contains a general disclaimer such as a provision disclaiming the handbook from being an employment contract, a**

> **guarantee of employment or an enforceable contract.** While a disclaimer may preclude a contract from being in effect, it does not preclude an agreement by two or more persons regarding terms set forth in the handbook relating to compensation to which both have otherwise assented. An agreement exists even if it does not include a specific guarantee as to the duration of the agreement or even if one or either party reserves the right to change the terms of the agreement.

56 Ill. Admin. 300.450. (*Emphasis added*.) Thus, the language in the "Retail Mortgage Incentive Plan" stating that no contract exists does not preclude the existence of an agreement. Chase fails to show that an agreement does not exist. As such, this Court finds that Montero has adequately pled that an agreement exists, and, thus, Montero's IWPCA claim is not futile.

### C. Bad Faith

Chase argues that Montero's motion was brought in bad faith as it has no factual basis. (Dkt. No. 93 at 10.) To support this claim, Chase contends that Chase offered to provide Montero with an analysis showing that Montero's calculation-of-overtime claim has no merit because she was actually paid more under Defendant's method than she would have been paid had Chase used the method set forth in 29 C.F.R. 778.120(a). (*Id.*) Chase asserts, "[b]ecause Montero's counsel did not like the prospect of that analysis disposing of the case, they served an overly broad Rule 30(b)(6) deposition notice to obtain information to create new claims." (*Id.*) Montero refutes this, contending that she did not seek the 30(b)(6) deposition as a means to embark upon a fishing expedition. (Dkt. No. 109 at 10). Indeed, Chase's argument disregards Montero's attempts to schedule a 30(b)(6) deposition in early June, several weeks prior to Defendants' counsel indicating they were in possession of the purported analysis. (Dkt. No. 109-1 at 6). This Court, therefore, finds no merit in Chase's argument that Montero filed the motion in bad faith.

### Conclusion

For the foregoing reasons, Montero's motion to vacate the order compelling Rodriguez to arbitration (Dkt. No. 78) and Montero's motion to join Rodriguez as a plaintiff (Dkt. No. 78) are denied. Montero's motion to file a third amended complaint (Dkt. No. 78) is granted.

Date: December 14, 2016  _____

U.S. Magistrate Judge, Susan E. Cox