# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff (as hereinafter defined), on behalf of herself and the Class of individuals that she seeks to represent for settlement purposes only (as hereinafter defined) and Defendants JPMorgan Chase Bank, N.A. ("Chase") and JPMorgan Chase & Co. (collectively, and as hereinafter defined, "Defendants").  Plaintiff, Class Counsel (as hereinafter defined), and Defendants hereby stipulate and agree that, in consideration of the promises and covenants as set forth in this Agreement and upon entry by the Court (as hereinafter defined) of a Final Order and Judgment (as hereinafter defined), all claims of the Plaintiff, the FLSA Collective Members (as hereinafter defined), and the Class Members (as hereinafter defined) in the action entitled *Cecilia Montero v. JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*, Northern District of Illinois Case No. 1:14-cv-09053 (the "Litigation") shall be settled, compromised, and released upon the terms and conditions contained herein.

## RECITALS

WHEREAS, Plaintiff Cecilia Kolbeck (formerly Montero) filed this putative class and collective action litigation against Defendants on November 11, 2014 asserting claims under the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA");

WHEREAS, Plaintiff seeks recovery of, among other things, overtime wages, liquidated damages, attorneys' fees, and costs;

WHEREAS, on April 17, 2017, the Court granted the Parties' (as hereinafter defined) Joint Motion to Stay Pending Mediation, pursuant to which the Litigation (as hereinafter defined) was stayed and the FLSA claims of each FLSA Collective Member (as hereinafter defined) were tolled as of April 5, 2017;

WHEREAS, Defendants denied and continue to deny all of the allegations made by Plaintiff in the Litigation (as hereinafter defined), and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation, or that any claims asserted by Plaintiff may proceed on a class or collective action basis.  Nonetheless, without admitting or conceding any arguments, issues, liability, or damages whatsoever, or that any claims alleged in the Litigation may proceed on a class or collective action basis, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden and expense of continuing the Litigation;

WHEREAS, Class Counsel (as hereinafter defined) has conducted extensive formal discovery including, but not limited to, interviewing Plaintiff, propounding and responding to written discovery and reviewing, analyzing thousands of pages of documents produced by the Parties (as hereinafter defined), and engaging in numerous discussions with Defendants' counsel regarding the claims;

1

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiff and the Class (as hereinafter defined);

WHEREAS, this Agreement resulted from and is the product of extensive, good faith and arm's length negotiations. The Parties participated in private mediation on August 22, 2017, and engaged in follow-up negotiations in order to reach a resolution in principle on October 5, 2017;

WHEREAS, as a result of these efforts, the Parties entered into this Agreement, subject to preliminary approval and final approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, to fully, finally, and forever resolve, discharge, and release all rights and claims of Plaintiff, the FLSA Collective Members (as hereinafter defined) and the Class Members (as hereinafter defined) in exchange for Defendants' agreement to pay a maximum total amount of Three Million Dollars ($3,000,000.00), inclusive of Settlement Costs and Settlement Awards as set forth below;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Class, and that would not occur for several years, or at all, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class; and

WHEREAS, the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims. It is the Parties' desire and intention to affect a full, complete, and final settlement and resolution of all existing disputes and claims as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1  **Agreement**.  "Agreement" shall mean this Settlement Agreement and Release, and all exhibits.

1.2  **Claim Form**.  "Claim Form" shall mean the form provided to Class Members and FLSA Collective Members to submit in order to obtain their Individual Settlement Amount pursuant to Section 2.4 of this Agreement.  The Claim Form shall be in the form attached as Exhibit B to this Agreement.

1.3  **Claim Form Period**.  "Claim Form Period" shall mean the period of time in between the Administrator's mailing of the Claim Form and the Claim Form Deadline (as hereinafter defined).

1.4     **Claim Form Deadline**.  "Claim Form Deadline" shall mean the date that is sixty (60) calendar days after the date that the Claims Administrator mails the Claim Forms to Class Members and FLSA Collective Members pursuant to Section 2.4(c) of this Agreement. If the Claims Administrator re-mails the Claim Form to any individual pursuant to Section 2.4(d) of this Agreement because the first mailing was returned as undeliverable, the Claim Form Deadline for such individuals shall be the later of (a) (60) calendar days after the original mailing to all Class Members and FLSA Collective Members, or (b) thirty-five (35) calendar days after the re-mailing.  If the Claim Form Deadline falls on a Sunday or holiday, the deadline to return Claim Forms will be the next business day that is not a Sunday or holiday.

1.5     **Claimant**.  "Claimant" shall mean any Qualified Class Member and/or FLSA Collective Member who timely submits a valid and complete Claim Form on or before the Claim Form Deadline in accordance with Section 2.4(e) of this Agreement, or a Qualified Class Member and/or FLSA Collective Member whose Claim Form is accepted in accordance with Section 2.4(e) below, and who has not opted-out of the settlement in accordance with Section 2.5 of this Agreement.

1.6     **Claims Administrator**.  "Claims Administrator" shall mean the entity selected by the Parties to provide notice to the Class and administer payment of the settlement to Class Members.

1.7     **Class; Class Members**.  "Class" shall mean all persons employed by Chase as Mortgage Bankers (as hereinafter defined) at any time in Illinois during the Covered Period, except that any individual who timely submitted or submits a valid request for exclusion shall not be included in the Class.  A member of the Class is a "Class Member."  Plaintiff will move for class certification, for settlement purposes only, under the Federal Rules of Civil Procedure in her motions for Preliminary Approval and/or Final Approval, and Defendants will not oppose such motion(s).

1.8     **Class Counsel**.  "Class Counsel" shall mean Caffarelli & Associates Ltd., 224 S. Michigan Ave., Ste. 300, Chicago, IL 60604.

1.9     **Court**.  "Court" shall mean the United States District Court for the Northern District of Illinois.

1.10    **Covered Period**.  "Covered Period" shall mean: (a) for Mortgage Bankers who worked in Illinois locations, the period from November 11, 2004 through the date of the Order Granting Preliminary Approval; and (b) for Mortgage Bankers who worked in any other states, the period from April 5, 2014 through the date of the Order Granting Preliminary Approval.

1.11    **Defendants**.  "Defendants" shall mean JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

1.12    **Defendants' Counsel**.  "Defendants' Counsel" shall mean Sam S. Shaulson, Sarah E. Bouchard, Thomas A. Linthorst, W. John Lee, Thomas F. Hurka and Benjamin Jacobs of Morgan, Lewis & Bockius LLP.

**1.13**  **Effective; Effective Date**.  The "Effective Date" is the tenth business day after the last of the following dates:

    a)  All Parties, Class Counsel, and Defendants' Counsel have executed this Agreement;

    b)  The Court has entered, without material change, the Final Order and Judgment; and

    c)  The final disposition of any related appeals, and in the case of no appeal or review being filed, expiration of the applicable appellate period.

**1.14**  **Escrow Account**.  "Escrow Account" shall mean the FDIC insured interest-bearing account(s) created and controlled by the Claims Administrator.

**1.15**  **Fairness Hearing**.  "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

**1.16**  **Final Individual Settlement Amount**.  "Final Individual Settlement Amount" shall mean the final gross amount sent to any Claimant under this Agreement.

**1.17**  **Final Order and Judgment**.  "Final Order and Judgment" shall mean the final Order entered by the Court after the Fairness Hearing approving the settlement and entering Judgment pursuant to this Stipulation and in accordance with Fed. R. Civ. P. 58.  A proposed version of the Final Order and Judgment shall be submitted to the Court in the form attached hereto as Exhibit D.

**1.18**  **FLSA Collective; FLSA Collective Member**.  "FLSA Collective" shall mean all persons employed by Chase as a Mortgage Banker at any time in the United States from April 5, 2014 through the date of the Order Granting Preliminary Approval.  A member of the FLSA Collective is an "FLSA Collective Member."

**1.19**  **Individual Settlement Amount**.  "Individual Settlement Amount" shall mean the amount offered to each Class Member and/or FLSA Collective Member and described in the individual's Claim Form pursuant to Section 2.4(c) of this Agreement.  An individual who is both a Class Member and FLSA Collective Member shall be offered one Individual Settlement Amount.

**1.20**  **Litigation**.  "Litigation" shall mean *Cecilia Montero v. JPMorgan Chase & Co., et al.,* No. 1:14-cv-09053, pending in the United States District Court for the Northern District of Illinois.

**1.21**  **Maximum Settlement Amount**.  "Maximum Settlement Amount" shall have the meaning defined in Section 3.1 below.

**1.22**  **Mortgage Banker**.  "Mortgage Banker" shall mean the following job titles as reflected in Chase's human resources information system during the Covered Period:  MB Retail Mortgage Banker; MB Mortgage Banker RTL Out Mkt; MB BSC Mtg Banker; MB HE Mortgage Banker; MB CD Mortgage Banker; MB Retail Mortgage Banker CPC.  "Mortgage Banker" shall also mean, from October 30, 2017 to the end of the Covered

Period, the following job titles as reflected in Chase's human resources information system:  Home Lending Advisor HE; Home Lending Advisor CD; Home Lending Advisor BSC Senior Home Lending Advisor.

**1.23**    **Named Plaintiff**.  "Named Plaintiff" shall mean Cecilia Kolbeck (formerly Montero).

**1.24**    **Notices**.  The "Notices" include the "Notice of Class and Collective Action Settlement" and the "Notice of Collective Action Settlement" that will be provided pursuant to Section 2.4(c) of this Agreement, subject to approval by the Court, substantially in the form attached hereto as Exhibit A.

**1.25**    **Net Settlement Fund**.  "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for court-approved attorneys' fees and costs as described in Section 3.2, court-approved Enhancement Award payments to Plaintiff as described in Section 3.3, the Reserve Fund as described in Section 3.5, Settlement Administration Expenses, the Defendants' share of payroll taxes resulting from payment of the Enhancement Award and the allocated wage portion to each Claimant, and any taxes incurred directly or indirectly as a result of investing the Settlement Payment.  The Net Settlement Fund shall be used to pay all amounts due to Claimants.

**1.26**    **Opt-Out Period**.  "Opt-Out Period" shall mean the period of time in between the Administrator's mailing of the Claim Form and the Opt-Out Deadline.

**1.27**    **Opt-Out Deadline**.  "Opt-Out Deadline" shall mean the date that is sixty (60) calendar days after the Claims Administrator mails the Claim Forms to Class Members pursuant to Section 2.4(c) of this Agreement.  If the Claims Administrator re-mails the Claim Form to any individual pursuant to Section 2.4(d) of this Agreement because the first mailing was returned as undeliverable, the Opt-Out Deadline for such individuals shall be the later of (a) sixty (60) calendar days after the original mailing to all Class Members, or (b) thirty-five (35) calendar days after the re-mailing.  If the Opt-Out Deadline falls on a Sunday or holiday, the deadline to return Claim Forms will be the next business day that is not a Sunday or holiday.

**1.28**    **Order Granting Preliminary Approval**.  "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class Members and FLSA Collective Members, and the time period for opt-outs and objections.  A proposed version of the Order Granting Preliminary Approval shall be submitted to the Court in the form attached hereto as Exhibit C.

**1.29**    **Parties**.  "Parties" shall refer to the Plaintiff and Defendants.

**1.30**    **Plaintiff**.  "Plaintiff" shall refer to Cecilia Kolbeck (formerly Montero), the Named Plaintiff in this action, and shall also include any and all of her representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.31    **Qualified Class Member**.  "Qualified Class Member" shall mean a Class Member who does not opt out in the manner prescribed in Section 2.5 of this Agreement.

1.32    **Settlement**.  The "Settlement" shall mean the settlement embodied in this Agreement, and all exhibits.

1.33    **Settlement Administration Expenses**.  "Settlement Administration Expenses" are those expenses incurred and charged by the Claims Administrator in effectuating the Settlement, including any fees or costs associated with the Claims Administrator establishing any interest-bearing account or investment vehicle for the settlement fund (or liquidating/closing such account or vehicle).

1.34    **Settlement Fund**.  The "Settlement Fund" shall be the settlement fund created by the payment by Defendants of up to the Maximum Settlement Amount of up to three million dollars ($3,000,000.00).

2.      **APPROVAL AND CLASS NOTICE**

2.0     **Stipulation to Certification.**  The Parties stipulate, for settlement purposes only, to certification by the Court of a class as to all claims in Illinois encompassed by this Settlement pursuant to Illinois law, and further stipulate, for settlement purposes only, to the certification by the Court of a collective action as to all claims encompassed by this Settlement pursuant to the FLSA.  If for any reason the Court does not approve this stipulation, or does not enter a Final Order and Judgment, or if this Settlement is lawfully terminated for any other reason, the preliminary and conditional certification of the class and collective shall become null and void, and the fact of certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

2.1     **Retention of Claims Administrator**.  The Claims Administrator shall be jointly selected by the Parties (subject to Chase's third-party oversight policy) and shall be responsible for the claims administration process and distributions to Claimants as provided herein, as well as for making any mailings and performing other services as required under this Agreement.  Data regarding Class Members and FLSA Collective Members shall be provided only to the Claims Administrator pursuant to Section 2.4(a) below, which shall execute a Confidentiality Agreement.  The Parties agree to cooperate with the Claims Administrator and assist it in administering the Settlement.  All Settlement Administration Expenses shall come out of the Settlement Fund.  If the Settlement is not given final approval by the Court and does not become Effective, the Parties shall bear settlement administration fees and costs equally.

2.2     **Preliminary Approval by the Court**.  By November 22, 2017, the Parties will submit to the Court a Motion for an Order Preliminarily Approving the Class Action Settlement ("Preliminary Approval Motion").  In connection with the Preliminary Approval Motion, the parties will submit to the Court, among other things: (a) proposed Notices of (i) Class and Collective Action Settlement and (ii) Collective Action Settlement, which are attached as Exhibit A, (b) Claim Form, which is attached as Exhibit B, and (c) a proposed

Order Granting Preliminary Approval, which is attached as Exhibit C. The Preliminary Approval Motion will seek the setting of dates for the submission of claim forms, opt-outs, objections, and a Fairness Hearing. Plaintiff will provide Defendants with a draft of the Preliminary Approval Motion and a draft of the Final Approval Motion in advance of filing. All proceedings in the Litigation will be stayed following entry of the Preliminary Approval Order, except as may be necessary to implement the Settlement or comply with the terms of the Settlement. Pending determination of whether the motions for Preliminary Approval and/or Final Approval should be granted, the Parties agree not to pursue any claims or defenses otherwise available to them in the Litigation.

2.3 **Final Order and Judgment from the Court**. The parties will seek to obtain from the Court, as a condition of settlement, a Final Order and Judgment in a form attached has Exhibit D, except that the parties may mutually agree to changes to the Proposed Final Order and Judgment prior to seeking the Court's final approval of the Settlement. The Proposed Final Order and Judgment will, among other things, (a) enter Judgment in accordance with this Agreement, (b) approve the settlement as fair, adequate, reasonable, and binding on all Qualified Class Members, and all Claimants, (c) dismiss the Litigation with prejudice, (d) enter an order permanently enjoining all Qualified Class Members and Claimants from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (e) incorporate the terms of this Agreement. Plaintiff will provide Defendants with a draft of the motion seeking the Final Order and Judgment 21 days before its filing.[1] The tolling of the statute of limitations on the FLSA Collective's claims ends on the date that the Court issues the Final Order and Judgment.

2.4 **Class Notice and Class Member Claim Forms**

a) <u>Notice List to Claims Administrator</u>. Within fourteen (14) calendar days of the date of the Order Granting Preliminary Approval, Defendants will provide the Claims Administrator with a list, in electronic form, of the names, last known addresses, telephone numbers, and the amount of overtime compensation previously paid to Class Members and FLSA Collective Members during the Covered Period ("Notice List"). Prior to the provision of the Notice List, the Claims Administrator shall execute an agreement, in a form acceptable to Defendants, not to use or disclose the information from the Notice List except as is necessary to perform the services required of the Claims Administrator under this Agreement. The Notice List and the data and information contained in the Notice List shall not be disclosed to Class Counsel, Plaintiff, or anyone else external to the Claims Administrator without the written consent of Defendants.

b) <u>Claims Administrator to Update Addresses</u>. Prior to mailing the Notices and Claim Forms, the Claims Administrator will update the addresses for those on the Notice List using the National Change of Address database and other available resources deemed suitable by the Claims Administrator.

---

[1] To the extent that any deadline for the Parties to act created by this Agreement falls on a Saturday, Sunday or court holiday, the deadline shall be the next business day that is not a Saturday, Sunday or court holiday.

c) <u>Notice to Class Members and FLSA Collective Members</u>. Within ten (10) calendar days after receiving the Notice List, or as soon thereafter as practicable, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notices appended hereto as Exhibit A and Claim Form appended hereto as Exhibit B to all Class Members and FLSA Collective Members using each member's last known address as provided by Defendants and as updated by Class Counsel or the Claims Administrator. The Claims Administrator shall give the Parties two (2) business days' notice before the Notices and Claim Forms are sent out. The Notices/Claim Form shall inform all Class Members and FLSA Collective Members of their rights under this Agreement and of their estimated minimum *pro rata* Individual Settlement Amounts, which shall be based upon the amount of overtime compensation previously paid to Class Members within the relevant time periods. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Members and/or FLSA Collective Members for whom the notice is returned by the post office as undeliverable and shall attempt re-mailings as described below. Defendants' Counsel and Class Counsel have the right to make inquiries and receive any information from the Claims Administrator as is necessary to the administration of this Settlement. The Claims Administrator may establish a website, subject to Defendants' ability to review and approve its content.

d) <u>Undeliverable Notices and Claim Forms</u>. If any Notices of Proposed Class Action Lawsuit and Fairness Hearing and Claim Forms are returned as undeliverable, the Claims Administrator shall forward them to any forwarding addresses provided by the U.S. Postal Service. If no such forwarding address is provided, the Claims Administrator shall perform skip traces using the Class Member/FLSA Collective Member's social security number to attempt to obtain the most recent addresses for these Class Members. For any notices sent to Class Members and/or FLSA Collective Members that are returned undeliverable, Class Members and/or FLSA Collective Members will have the longer of the remaining claim period or thirty-five (35) days from the date of any re-mailing to submit a claim form. The Claims Administrator shall, within three (3) calendar days after the first mailing of Notice, notify Class Counsel and Defendants' Counsel of the precise date of the end of the Opt-Out Period and Claim Form Period. The Claims Administrator shall send one (1) reminder postcard to all Class Members and FLSA Collective Members who have not yet submitted a Claim Form or Opt-Out Statement twenty (20) days prior to the expiration of the 60-day Claim Form Period. Such postcards shall be sent by first-class United States mail, postage prepaid, to the last known address of each Class Member and FLSA Collective Member.

e) The Claims Administrator shall notify Class Members and FLSA Collective Members who submit deficient claim forms ("Deficient Claimant(s)") of the deficiency within five (5) business days of receipt. Deficient Claimants will have fifteen (15) calendar days to cure said deficiencies. Deficiencies that are not cured within fifteen (15) calendar days shall render the Deficient Claimant's claim waived, but the Deficient Claimant will still be bound by the releases in this settlement, unless the deficiency is excused and the Claim Form accepted.

f)  Except for Claim Forms accepted in accordance with Section 2.4(e), each Class Member and FLSA Collective Member must submit his/her completed Claim Form to the Claims Administrator no later than the Claim Form Deadline in order to be eligible for his or her Final Individual Settlement Amount.  The postmark date of the Claim Form mailed by the Claims Administrator to the Class Member/FLSA Collective Member and the postmark date of the Claim Form mailed by the Class Member/FLSA Collective Member to the Class Administrator shall be deemed the exclusive means for determining whether a Class Member timely submitted his/her Claim Form.  In the event that there is no postmark date of the Claim Form being mailed by the Class Member/FLSA Collective Member to the Class Administrator, it shall be presumed that the Claim Form was mailed three (3) days prior to the Class Administrator's receipt of the Claim Form, excluding any Sunday or other day for which no postal service was provided.

g)  Within ten (10) calendar days following the filing of this Agreement with the Court, Defendants shall serve upon the appropriate state and federal officials a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715.  A copy of the CAFA Notices are attached as Exhibit E, and may be modified by Defendants as circumstances warrant.

**2.5    Class Member Opt-Out.**

a)  Any Class Member may request exclusion from the Class by "opting out."  Class Members who choose to opt-out of the class must mail a written, signed statement to the Claims Administrator stating that he or she is opting out of the Settlement ("Opt-Out Statement").  The Opt-Out Statement must contain the name, address and telephone number of the Class Member to be valid.  It must also contain the words "I elect to exclude myself from the settlement in *Montero v. J.P. Morgan Chase & Co. et al.*" in order to be valid.  To be effective, such Opt-Out Statements must also be sent via First Class United States mail and postmarked by the Opt-Out Deadline.

b)  If a Class Member submits a deficient Opt-Out Statement, the Claims Administrator shall notify the Class Member of the deficiency within five (5) business days of receipt.  The Class Member shall have fifteen (15) calendar days to cure said deficiencies, at which point his or her attempted opt-out will be rejected if not received.  Class Members submitting untimely or deficient Opt-Out Statements shall be bound by the Settlement and its Class Member release but will not be considered Claimants for settlement distribution purposes.  If a Class Member submits both a Claim Form and a valid Opt-Out Statement, the Claim Form will control and the Class Member will be considered a Claimant.

c)  Plaintiff shall not opt-out of the Settlement.  Plaintiff's execution of this Stipulation shall signal her agreement to all of the terms of the Settlement.

**2.6**     **Objections to Settlement.**

    a)  Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be filed with the Court and served upon all counsel of record by no later than sixty (60) calendar days after the mailing of the Class Notices, which applies notwithstanding any argument regarding non-receipt of the notice. Any objection must also be mailed to Class Counsel and Defendants' Counsel at the addresses listed on the signature block below. Anyone who fails to file and serve timely written objections in this manner shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement and from filing any appeal from any final approval order issued by the Court.

    b)  An objector who has filed and served a timely written objection in accordance with Section 2.6(a) also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any time. No objector may appear at the Fairness Hearing unless he/she has filed a timely objection that complies with the procedures provided in Section 2.6(a). Only Class Members who are Qualified Class Members may object to the Settlement. Any Class Member who has submitted an Opt-Out Statement may not submit objections to the Settlement.

    c)  To be heard at the Final Approval Hearing, any written objection must: (a) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Class Member; (b) include a statement of such Class Member's specific objections; and (c) state the grounds for objection, as well as identify any documents which such objector desires the Court to consider.

    d)  The Parties may file with the Court written responses to any filed objections at or prior to the Fairness Hearing.

**2.7**     **Claims Administrator Reporting**. After issuing the class Notices and Claim Forms, the Claims Administrator shall provide periodic reports to counsel for the Parties with respect to the numbers of individuals submitting timely and valid Claim Forms, deficient Claim Forms, untimely Claim Forms, Opt-Out Statements, and objections. Within ten (10) calendar days of the close of the Claim Form Deadline, the Claims Administrator shall prepare a final list of all Claimants who timely submitted a valid Claim Form and did not opt-out of the settlement, including those whose Claim Forms were accepted in accordance with Section 2.4(e), together with copies of the applicable Claim Forms, and provide such information and documents to Counsel for Defendants only. The Claims Administrator will update and supplement this information as necessary or upon request by Counsel for Defendants. The parties will cooperate to ensure that appropriate consents are filed with the Court for all Claimants.

**2.8**     **Motion for Final Order and Judgment**.  No later than seven (7) calendar days before the Fairness Hearing, Plaintiff will submit a Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

**2.9**     **Entry of Judgment**.  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the Class and Collective for purposes of settlement only, (b) enter Judgment in accordance with the terms of this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Qualified Class Members and Claimants, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Qualified Class Members and Claimants from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (f) incorporate the terms of this Agreement.

**2.10**    **Right to Revoke**.  Defendants have the right to withdraw from the Settlement at any time prior to the entry of the Final Order and Judgment if:  (a) 5% or more of the Class Members opt out of the Settlement; or (b) the Settlement construed by the Court is materially different from this Agreement, meaning that (i) Defendants are required to pay more than the Maximum Settlement Amount set forth in Section 3.1; (ii) the Court does not certify the settlement class; (iii)  the Court does not certify a class releasing the claims set forth in Paragraph 3.9 below; or (iv) the Court otherwise makes an order inconsistent with any of the terms of this Settlement; or (c) Plaintiff or Class Counsel breaches the Agreement.  If Defendants withdraw, they will pay the administration costs through the date of withdrawal.

**2.11**    **Effect of Revocation or Failure to Grant Final Approval**.  In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, or the Agreement does not become Effective, or Defendants revoke the Settlement pursuant to Section 2.10, (i) this Agreement shall have no force or effect, other than the non-disclosure provisions in Paragraph 3.12, and the non-admission provisions in Paragraph 3.11; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) the preliminary and conditional certification of the class shall become null and void, and the fact of certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iv) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class or collective action certification or the merits of Plaintiff's claims or any other issue; and (v) the Litigation will proceed as if no settlement had been attempted.

**3.**      **SETTLEMENT TERMS**

**3.1**     **Settlement Payment**.

    a)    Defendants agree to pay a maximum of $3,000,000 (the "Maximum Settlement Amount"), which shall resolve and satisfy all monetary obligations under this

Agreement, including all attorneys' fees, litigation costs, Settlement Administration Expenses, payments to Claimants, all payroll taxes (including the share owed by Defendants), the Reserve Fund (hereinafter defined), and all other applicable taxes, interest, and Enhancement Awards. Defendants shall not pay more than the Maximum Settlement Amount.

b) When and if the Court enters the Final Order and Judgment, and the Effective Date as defined above has passed, Defendants shall deposit into the Escrow Account the Maximum Settlement Amount no later than seven (7) calendar days after the Effective Date. Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Fund.

c) Settlement payments will be made on a claims-made basis only. The Claims Administrator will calculate the final amounts due to each Claimant as the Final Individual Settlement Amount and issue checks payable to said Claimants.

d) Within thirty (30) calendar days following the Effective Date, the Claims Administrator will distribute the money in the Escrow Account by making the following payments:

    i. Paying Class Counsel Court-approved attorneys' fees as described in Section 3.2.

    ii. Reimbursing Class Counsel for all costs and expenses approved by the Court as described in Section 3.2.

    iii. Paying the Claims Administrator as described in Section 2.4(a).

    iv. Paying the Enhancement Award in the amounts described in Section 3.3.

    v. Reserving funds to be available for the Reserve Fund as described in Section 3.5.

    vi. Withholding and remitting payroll taxes (both the employees' and employers' portions of taxes) as described in Section 3.8.

    vii. Paying Claimants their Final Individual Settlement Amounts as described in Section 3.7.

e) The Parties agree that the Escrow Account is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), 26 U.S.C. Section 468B and Treas. Reg. §1.468B-1, 26 C.F.R § 1.468B-1, *et seq*., and will be administered by the Claims Administrator as such. The Claims Administrator shall apply for an employer identification number ("EIN") for the Escrow Account pursuant to Internal Revenue Service ("IRS") Form SS-4, and in accordance with Treas. Reg. §1.468B-2(k)(4), 26 C.F.R § 1.468B-2(k)(4). With respect to the Escrow Account, the Claims Administrator shall: (1) calculate,

withhold, remit and report each Claimant's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes), and indemnify Defendants for any penalty arising out of any error or incorrect calculation and/or interest with respect to any late deposit of the same; (2) calculate and coordinate with Defendants their share of payroll taxes; (3) satisfy all federal, state and local and income and other tax reporting, return and filing requirements with respect to the Escrow Account; and (4) satisfy out of the Escrow Account all (i) taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the Escrow Account, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the Escrow Account and the performance of its duties and functions as described in this Stipulation. The aforementioned taxes, fees, costs and expenses shall be treated as and included in the costs of administering the Escrow Account. The Parties and the Claims Administrator shall elect to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund on the earliest date set forth in Treas. Reg. §1.468B-1(j)(2)(i), 26 C.F.R §1.468B-1(j)(2)(i), and that such election statement shall be attached to the appropriate returns as required by Treas. Reg. §1.468B-1(j)(2)(ii), 26 C.F.R §1.468B-1(j)(2)(ii). The Parties agree to cooperate with the Claims Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section 3.1(e). The Claims Administrator will agree to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the Escrow Account. The Defendants (or some other person on behalf of the Defendants) shall supply to the Claims Administrator and to the IRS the statement described in Treas. Reg. §1.468B-3(e)(2), 26 C.F.R §1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which the Defendants (or some other person on behalf of the Defendants) make a transfer to the Escrow Account.

f) The payments to Plaintiff and Claimants pursuant to Section 3.7 shall be considered compensation for disputed unpaid wages, penalties, and interest, resulting from their period of employment with Defendants. To the extent any settlement payment results in any overpayment of unemployment benefits to Plaintiff and/or any Claimant, the amount of any such overpayment shall be the responsibility of the individual Plaintiff and/or Claimant.

g) It is intended that all transfers by Defendants to the Escrow Account will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Code, 26 U.S.C. Section 461(h)(1), and Treas. Reg. § 1.461-1(a)(2), 26 C.F.R. § 1.461-1(a)(2). As such, the Defendants shall not be taxed on any income of the Escrow Account.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

a) At least fourteen (14) days prior to the final approval hearing, Class Counsel shall petition the Court for attorneys' fees and reimbursement of reasonable litigation costs and expenses from the Settlement Fund. Class Counsel shall not seek more than one-

third of the Settlement Fund in fees and costs. Defendants will not oppose such application provided that Class Counsel has abided by the terms of this Stipulation. Defendants shall have no additional liability for attorneys' fees and costs relating to the Litigation, the Settlement, or any claims released by this Settlement.

b) The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

**3.3     Enhancement Award to Plaintiff.**  Prior to the Fairness Hearing, Class Counsel will apply to the Court for Plaintiff to receive an Enhancement Award of One-Thousand Dollars ($1,000.00) from the Settlement Fund for services rendered to the Class. Defendants will not oppose such application provided that it is made in accordance with the terms of this Stipulation. The outcome of the Court's ruling on the application for an Enhancement Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Plaintiff shall not appeal any decision by the Court regarding the Enhancement Award.

**3.4     Untimely, Deficient, or Disputed Claims.**  The Claims Administrator shall promptly advise counsel for the Parties of any Class Members and/or FLSA Collective Members who file late or deficient claims, who dispute their allocation based on the settlement formula, or who have come forward as individuals who were not identified as Class Members and/or FLSA Collective Members but who seek to participate. Chase's personnel records reflecting dates a Class Member or FLSA Collective Member worked as a Mortgage Banker and the amounts of overtime compensation paid to them during the Covered Period are presumed to be correct unless that individual submits documents proving otherwise. Defendants shall decide in their sole discretion whether such individuals or any others may participate in the Settlement, and whether their allocation based on the settlement formula should be corrected (if applicable). If accepted, such individuals shall be considered Claimants for all purposes under this Agreement. Any Class Members and/or FLSA Collective Members whose Claim Forms are accepted or whose allocation is permitted to be increased in accordance with this Section at least seven (7) or more calendar days prior to the distribution of the Final Individual Settlement Amount shall be paid from the Net Settlement Fund and the calculations of the Final Individual Settlement Amount for all other Claimants adjusted as necessary in accordance with Section 3.7. Any Class Member and/or FLSA Collective Member whose Claim Form is accepted or whose allocation is permitted to be increased in accordance with this Section after the date that is less than seven (7) calendar days prior to the distribution of the Final Individual Settlement Amount, or after the distribution, shall be paid from the Reserve Fund. Once settlement funds no longer remain to accept additional claims or adjust allocations, no further claims shall be accepted, or changes to allocations made. In no event shall the acceptance of any Claim Forms or changes to allocations in accordance with this Section result in Defendants being required to pay more than the Maximum Settlement Amount of $3,000,000.00.

**3.5**     **Reserve Fund.**  One-Hundred Thousand Dollars ($100,000.00) of the Settlement Fund shall be held by the Claims Administrator used as a Reserve Fund to make payments to Class Members and/or FLSA Collective Members whose Claim Forms are accepted, or whose allocation is increased, pursuant to Section 3.7(a).  The money in the Reserve Fund shall remain available to pay such amounts until 180 calendar days after the Effective Date.  After that date, any money remaining in the Reserve Fund shall be returned to Defendants ("Retained Funds").

**3.6**     **Cy Pres.**  The Parties acknowledge that the Doctrine of Cy Pres is not applicable to this Settlement because the terms of this Stipulation expressly provide for the disposition of the entire Maximum Settlement Amount, whether claimed or unclaimed, and interest on the QSF.

**3.7**     **Distribution to Claimants.**

a)  The Net Settlement Fund shall be the amount of money remaining from the up to $3,000,000.00 Settlement Fund after deducting (a) attorneys' fees and costs approved by the Court, pursuant to Section 3.2; (b) the Enhancement Award approved by the Court pursuant to Section 3.3; (c) amounts paid to the Claims Administrator pursuant to Section 2.1; (d) amounts calculated as Defendants' share of payroll taxes; and (e) amounts set aside for the Reserve Fund pursuant to Section 3.5.  The Net Settlement Fund shall be allocated as follows:

　　i.  Each Claimant will receive a pro rata share of the Net Settlement Fund based on the amount of overtime compensation previously paid to the Claimant during the Covered Period in proportion to the total amount of overtime compensation previously paid to all Claimants during the Covered Period.

　　ii.  Irrespective of the amount of overtime paid to a particular Claimant, each Claimant shall receive a minimum payment of $100.00, provided that someone who is a member of both the Class and FLSA Collective shall only receive one minimum payment of $100.00 (if applicable).

b)  A Claimant's Final Individual Settlement Amount shall be their Individual Settlement Amount subject to any adjustments under Section 3.7(a).

c)  Names of Claimants and their allocation amounts shall be kept strictly confidential by the Claims Administrator, which information will not be disclosed except as is necessary to the administration of the settlement, and will be not released to Class Counsel, and will be filed under seal at Defendants' option.

d)  Defendants and the Claims Administrator shall exchange such information as is necessary and reasonably available for the Claims Administrator and Defendants to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.8.

e)  Claimants will have ninety (90) calendar days after each check date to redeem their settlement payments.  If Claimants do not redeem their settlement payment checks

within the 90-day period, their settlement checks (the "Unclaimed Checks") will be void and a stop-payment will be placed. In such event, the amounts associated with the Unclaimed Checks shall remain the property of Defendants and shall be returned to Defendants by the Claims Administrator ("Unclaimed Check Retained Funds"). Claimants who do not redeem their settlement checks shall remain bound by this Settlement and the Release in Section 3.9(a). This Stipulation and the associated Final Order and Judgment do not and will not create any unpaid residue or unpaid residual with respect to the Retained Funds or Unclaimed Check Retained Funds, and no distribution of such shall be required. The provisions of any unclaimed property statute or law do not apply to this action or this Stipulation. The outcome of any proceeding related to the distribution of amounts associated with Unclaimed Checks shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

f) All payments to Claimants made pursuant to this Agreement shall be deemed to be paid to such Claimants solely in the year in which such payments actually are received by the Claimants. It is expressly understood and agreed that any amount paid to any Claimant shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "JPMorgan Chase Benefit Plans") provided by Defendants or any Releasee, and no payment made pursuant to this Settlement will be considered as "Compensation," "Earnings," "Salary," or any similar definition under any JPMorgan Chase Benefit Plans, and are not considered eligible compensation for JPMorgan Chase Benefit Plans, or for JPMorgan Chase's 401(k) Savings and Retirement Plans, or for any other benefit purposes, or otherwise require any contribution or award under any JPMorgan Chase Benefit Plan, or otherwise modify benefits, contributions or coverage under any JPMorgan Chase Benefit Plan.

## 3.8 Taxability of Settlement Payments.

a) For tax purposes, the Enhancement Award paid to Plaintiff pursuant to Section 3.7 shall be treated as wages.

b) Within twenty (20) calendar days following the Effective Date, Plaintiff shall provide the Claims Administrator with a duly completed IRS Form W-9 or applicable IRS Form W-8 together with any other documentation and information requested by the Claims Administrator in connection with the Claims Administrator's tax reporting obligations under the Code. Plaintiff understands that in the event valid U.S. tax forms or other required supporting documentation are not provided to the Claims Administrator, the Claims Administrator may be required to withhold tax from payments made pursuant to this Agreement.

c) For tax purposes, the payments to Plaintiff and Claimants pursuant to Section 3.7 shall be allocated as follows: unpaid wages (50% of each settlement payment) and non-wage compensation (50% of each settlement payment). The Claims Administrator will calculate, withhold, remit and report each Plaintiff and Claimant's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes). Defendants shall cooperate with the Claims Administrator to timely arrive at an amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due by employers, with respect to the amounts treated as wages, which amounts shall be withheld by the Claims Administrator from the applicable wage payments. The Claims Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to all amounts payable to Claimants required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the Escrow Account.

d) Payments treated as unpaid wages pursuant to Section 3.8(c) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the FICA tax, and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form W-2.

e) Within twenty (20) calendar days following the Effective Date, Class Counsel shall provide the Claims Administrator with a duly completed IRS Form W-9. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be reported by the Claims Administrator on the applicable IRS Form 1099 as required by the Code and shall be made without withholding, provided the Claims Administrator has timely received a duly completed Form W-9 from Class Counsel.

f) As to the payments reported as non-wage compensation, Plaintiff and Claimants agree to indemnify and hold harmless Defendants for any taxes, penalties, interest, attorneys' fees and costs, or other amounts due or owing by Plaintiff and Claimants on such payments. Other than as set forth above, and as required by law, Defendants and the Claims Administrator will not make from the payment to Plaintiff or Claimants any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Final Order and Judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to Plaintiff or Claimants shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by Defendants.

g) Plaintiff and each individual Claimant will be solely responsible for all taxes, interest, penalties, or other amounts due with respect to any payment received pursuant to this Agreement (other than FICA and any federal and state unemployment taxes specified in Section 3.8(d)). Plaintiff, on behalf of the Class Members and the Claimants, acknowledges and agrees that she has not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

h) The Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement, and shall report the payments in accordance with applicable law.

**3.9    Release**

a) **Release of Claims by Plaintiff, Qualified Class Members and Claimants.** Upon the entry of the Final Order and Approval, each Qualified Class Member, on his or her behalf, and on behalf of his or her respective current, former and future heirs, assigns, spouses, executors, administrators, agents, and attorneys, shall fully release and discharge JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and their present and former affiliates, divisions, subsidiaries, parents, predecessors (including Washington Mutual Bank and Washington Mutual, Inc. and their affiliated and related entities), any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them ("Releasees"), of and from any and all wage and hour claims arising from his or her employment as a Mortgage Banker, including statutory claims, whether known or unknown, in law or in equity, including, but not limited to, any and all wage and hour claims under Illinois law and other state and local law, that accrued or accrue prior to the date of the Order Granting Preliminary Approval, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime compensation, failure to properly calculate overtime compensation, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay wages or compensation or final wages or compensation, failure to reimburse for business expenses, making illegal deductions from wages or compensation, and/or failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, claims under the Employee Retirement Income Security Act ("ERISA") that are related or derivative of the claims released in this Section 3.9(a), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law.

In addition, each FLSA Collective Member Claimant, on his or her behalf, and on behalf of his or her respective current, former and future heirs, assigns, spouses, executors, administrators, agents, and attorneys, shall fully release and discharge Defendants and Releasees from any and all federal, state, and local wage and hour claims arising from his or her employment as a Mortgage Banker, including statutory claims, whether known or unknown, in law or in equity, including FLSA claims, including but not limited to claims under 29 U.S.C. § 206, 207, 211(c) and 215(a), including liquidated damages, through the latter of the date of the Order Granting Preliminary Approval or the date the Claim Form is filed with the Court, and including claims under any legal theory for failure to pay minimum wage, failure to

pay overtime compensation, failure to properly calculate overtime compensation, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay wages or compensation or final wages or compensation, failure to reimburse for business expenses, making illegal deductions from wages or compensation, and/or failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, claims under ERISA that are related or derivative of the claims released in this Section 3.9(a), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other federal, state, or local statutory and common law.

This Settlement is intended to include in its effect all claims identified in this Section 3.9(a), including claims that each Qualified Class Member and Claimant does not know or suspect to exist in his or her favor against Defendants or Releasees at the time of the release. The Qualified Settlement Members and Claimants shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the claims identified in this Section 3.9(a).

b) **General Release of Claims by Plaintiff.** In addition, to the maximum extent permitted by law, Plaintiff generally releases Defendants and the Releasees from any and all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which against the Defendants or Releasees Plaintiff and her heirs, executors, administrators, successors, and assigns, ever had, may now have, or hereafter later determine that she has or had upon, or by reason of, any cause or thing whatsoever, including, but not limited to relating to her employment or termination of employment, including, but not limited to, claims arising under the Consumer Financial Protection Act, 12 U.S.C. § 5567 ("CFPA"), Americans With Disabilities Act, the National Labor Relations Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., including but not limited to, breach of fiduciary duty and equitable claims to be brought under §1132(a)(3) ("ERISA"), the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act, and/or any other federal, state or local human rights, civil rights, wage-hour, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty or any action similar thereto against Defendants or Releasees, including any claim for attorneys' fees, expenses or costs based upon any conduct from the beginning of the world up to and

including the date that Plaintiff executes this General Release. Specifically included in this General Release of Claims by Plaintiff are any and all claims arising out of the same transactions, series of connected transactions, occurrences, or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Litigation. Plaintiff does not, however, waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that she agrees not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; and further, Plaintiff does not release any claim for breach of the terms of the Agreement.

This Settlement is intended to include in its effect all claims identified in this Section 3.9(b), including claims that Plaintiff does not know or suspect to exist in her favor against Defendants or Releasees at the time of the release. Plaintiff shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits she may otherwise have had relating to the claims identified in this Section 3.9(b).

c) Plaintiff hereby agrees that she shall not seek and hereby waives any claim for employment or re-employment (as a full-time or part-time employee) or assignment or work (as a temporary worker, independent contractor or consultant) or, in the event of a merger or acquisition, continued employment or assignment or work or any other position in which she receives payment either directly or indirectly from any Defendant, and that this General Release shall be a complete bar to any such application, employment, continued employment, re-employment or work.

d) Nothing in this Release shall prohibit or restrict Plaintiff, Claimants, or Qualified Class Members from: (i) providing information to or cooperating with Congress, the Securities and Exchange Commission ("SEC"), the Commodity Futures Trading Commission ("CFTC"), the Consumer Financial Protection Bureau ("CFPB"), the EEOC, the Occupational Safety and Health Administration ("OSHA"), the National Labor Relations Board ("NLRB") or any other federal, state or local government, regulatory, or law enforcement agency ("Government Agencies"), the Financial Industry Regulatory Authority ("FINRA"), or any other self-regulatory organization ("SRO"); (ii) reporting to Defendants' management or directors regarding conduct the employee believes to be in violation of the law or prohibits or restricts the employee from providing information to or cooperating with any Government Agencies or any SROs; (iii) communicating with any Government Agencies or SRO or otherwise participating in any investigation or proceeding that may be conducted by any Government Agency or SRO, including providing documents or other information; or (iv) receiving an award for information provided to any Government Agencies other than for charges filed with the EEOC or corresponding state or local agency as set forth above.

e) Plaintiff further covenants that she will not participate in any other legal actions against Defendants relating to claims released by this Stipulation, and will not opt-in, will withdraw any opt-in, will dismiss the action or herself from the action in actions

where she is a claimant, plaintiff or appellant, and will opt-out of those actions if she becomes aware of such actions.

f) Qualified Class Members who have not submitted timely and valid Claim Forms will still be bound by the Settlement and the Release in Section 3.9 (excluding claims under the FLSA), but will not be entitled to receive payment under the Settlement.

g) Plaintiff certifies that she has returned all property of Defendants or Releasees in her possession or control, including without limitation, equipment, telephones, credit cards, keys, pagers, tangible proprietary information, documents, computers and computer discs, personal data assistants, files and data, which she prepared or obtained during the course of her employment.

h) **Release of Fees and Costs for Settled Matters.** Class Counsel and Plaintiff, on behalf of the Class and each individual Qualified Class Member and Claimant, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that she or they may have against Defendants or Releasees for attorneys' fees or costs associated with Class Counsel's representation of Plaintiff, the Class, the Qualified Class Members, the FLSA Collective, and the Claimants in this Litigation, the Settlement, or any claims being Released by this Stipulation and related papers. Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals and/or their representation in the Litigation.

3.10 **No Assignment.** Class Counsel and Plaintiff, on behalf of the Class and each individual Qualified Class Member and Claimant, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

3.11 **Non-Admission.** Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendants or Releasees of any liability, culpability, negligence, or wrongdoing toward Plaintiff, the Class Members, the FLSA Collective Members, or any other person, and Defendants and Releasees specifically disclaim any liability, culpability, negligence, or wrongdoing toward Plaintiff, the Class Members, FLSA Collective Members, or any other person, or that class or collective action certification is appropriate in this or any other matter. Each of the Parties has entered into this Stipulation with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence of liability or that class or collective action certification is appropriate. There has been no determination by any Court as to the merits of the claims asserted by Plaintiff against Defendants or as to whether a class or collective should be certified, other than for settlement purposes only. Furthermore, nothing in this Agreement shall be cited to as,

construed to be, admissible as, or considered any form of waiver of any alternative dispute resolution agreements, provisions, or policies by Defendants or Releasees.

3.12    **Non-Disclosure/Non-Disparagement.**  Plaintiff agrees not to disclose to individuals other than immediate family, tax preparers, and attorneys the terms of this Settlement or the negotiations leading thereto except in court papers or if required by legal process or protected by law.  After the filing of the Motion for Preliminary Approval, neither Plaintiff nor Class Counsel shall, directly or indirectly, issue or cause to be issued any statements to the media or engage in any other publicity regarding the Stipulation or the Settlement, nor shall they issue any notice of the Settlement to Class Members or FLSA Collective Members (other than communications with Plaintiff and Claimants, or in response to any inquiry by a Class or FLSA Collective Member) except for the class notice issued through the Claims Administrator as set forth in this Agreement.  Neither Plaintiff nor Class Counsel, directly or indirectly, shall issue a press release, hold a press conference, publish information about the settlement or the settlement negotiations on any website, or otherwise publicize the settlement or negotiations.  Plaintiff and Class Counsel agree not to respond to any press inquiries concerning the settlement except to refer reporters to the papers filed with the District Court.  Plaintiff further agrees not to make disparaging comments relating to Defendants' compensation of Plaintiff.  Nothing in this Section prohibits Class Counsel from citing to the Order Granting Preliminary Approval or Final Approval in future court papers in support of arguments that Class Counsel is adequate.

3.13    **Non-Interference with Settlement.**  Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Order and Judgment, Plaintiff and all Class and FLSA Collective Members and anyone acting on behalf of any Class and FLSA Collective Member shall be barred and enjoined from:  (a) further prosecution of the Litigation; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class or collective action basis any action, claim or proceeding against Defendants in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

3.14    **Returns and/or Destruction of Confidential Settlement Materials.**  Plaintiff and Class Counsel agree to return and/or destroy all documents produced to them for settlement purposes in this action.  If Plaintiff and Class Counsel elect to destroy said documents, they shall timely provide an affidavit of destruction to Defendants.

3.15    **Miscellaneous**

a)    **Cooperation Between the Parties; Further Acts.**  The Parties shall cooperate fully with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

b) **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

c) **Binding Effect.** This Agreement shall be binding upon the Parties and Class Counsel, with respect to Plaintiff and the Class and Collective Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

d) **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

e) **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

f) **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

g) **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Illinois, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

h) **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

i) **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

j) **When Agreement Becomes Effective.** Except for provisions of this Agreement requiring any Party to act or seek Court action prior to Court approval, which provisions are intended to be binding on the parties upon mutual execution hereof, this Agreement shall become fully effective upon the Effective Date.

k) **Facsimile/Electronic Signatures.** Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

l) **Extensions of Time.** If any deadlines related to this Settlement cannot be met, Class Counsel and counsel for Defendants shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement. In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Stipulation.

m) **Counterparts.** The Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

n) The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto; but this Agreement is not designed to and does not create any third party beneficiaries other than third parties that are identified as Releasees in Section 3.9 of this Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**CLASS COUNSEL**:

DATED: _____, 2017     CAFFARELLI & ASSOCIATES LTD.


By:    _____
       Alejandro Caffarelli
       *Attorneys for Plaintiff and the Settlement Class and*
       *Collective*


**NAMED PLAINTIFF:**

DATED: _____, 2017


By:    _____
       Cecilia Kolbeck

**DEFENDANTS:**

DATED: _____, 2017


By:    _____
       On behalf of Defendants JPMorgan Chase
       Bank, N.A. and JPMorgan Chase & Co.

**CLASS COUNSEL:**

DATED: _____, 2017    CAFFARELLI & ASSOCIATES LTD.


By: _____ _____
        Alejandro Caffarelli
        *Attorneys for Plaintiff and the Settlement Class and*
        *Collective*


**NAMED PLAINTIFF:**

DATED: _____, 2017


By: _____ _____
        Cecilia Kolbeck

**DEFENDANTS:**

DATED: 11/21_____, 2017


By: _____ *Maribeth Robinson*_____
        On behalf of Defendants JPMorgan Chase
        Bank, N.A. and JPMorgan Chase & Co.

**CLASS COUNSEL:**

DATED: _November 22_, 2017     CAFFARELLI & ASSOCIATES LTD.

By:     Alejandro Caffarelli
        *Attorneys for Plaintiff and the Settlement Class and
        Collective*

**NAMED PLAINTIFF:**

DATED: _November 21_, 2017

By:     Cecilia Kolbeck

**DEFENDANTS:**

DATED: _____, 2017

By:     _____
        On behalf of Defendants JPMorgan Chase
        Bank, N.A. and JPMorgan Chase & Co.

# Exhibit B

1
2
3
4
5
6
7
8
9
10
11

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CECILIA MONTERO, on behalf of herself and all other similarly situated persons, known and unknown,<br><br>        Plaintiff,<br><br>    v.<br><br>JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A.,<br><br>        Defendants. | Case No. 1:14-cv-09053<br><br>**DECLARATION OF ZACHARY COOLEY RE: NOTICE PROCEDURES**<br><br>Date:      April 25, 2018<br>Time:     10:00 a.m.<br>Ctrm:    1025<br>Judge:   Hon. Susan E. Cox |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I, Zachary Cooley, declare as follows:

1.  I am employed as a Project Manager by KCC Class Action Services, LLC ("KCC"), located at 462 S Fourth St, Louisville Kentucky.  KCC was appointed as the Settlement Administrator in this matter and is not a party to this action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

1

**Class List**

2.      On December 22, 2017, KCC received from Defendant a list of five thousand six hundred sixty one (5,661) persons identified as the Confidential Class List.   The Confidential Class List included names, addresses, Social Security Numbers and Overtime Compensation received during the class period. KCC formatted the list for mailing purposes, removed duplicate records, and processed the names and addresses through the National Change of Address Database ("NCOA") to update any addresses on file with the United States Postal Service ("USPS"). A total of seven hundred seven (707) addresses were found and updated via NCOA. KCC updated its proprietary database with the Class List.

**Mailed Notice**

3.      On December 29, 2017, KCC caused the *Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing* and *Individual Class and/or FLSA Collective Member Claim Form* ("Notice Packet") to be printed and mailed to the five thousand six hundred sixty one (5,661) names and mailing addresses in the Confidential Class List. A true and correct copy of the Notice is attached hereto as Exhibit A.

4.      Since mailing the Notices to the Class Members, KCC has received one hundred sixty five (165) Notice Packets returned by the USPS with undeliverable addresses. Through credit bureau and/or other public source databases, KCC performed address searches for these undeliverable Notices and was able to find updated addresses for one hundred twelve (112) Class Members. KCC promptly re-mailed Notices to the new found addresses.

5.      On February 16, 2018, KCC caused a Reminder Postcard to be printed and mailed to five thousand five hundred eleven (5,511) Class Members who had yet to file a claim. A true and correct copy of the Reminder Postcard is attached hereto as Exhibit B.

**Case Website**

6. On or about January 3, 2018, KCC established a website www.ChaseMortgageBankerwageSettlement.com dedicated to this matter to provide information to the Class Members and to answer frequently asked questions. The website URL was set forth in the Notice. Visitors of the website can download copies of the Notice and other case-related documents, including the Settlement Agreement and Order Granting Preliminary Approval.

**Toll-Free Telephone Number**

7. On or before December 29, 2017, KCC established a toll-free telephone number dedicated to answering telephone inquiries from Class Members.

**Fax Number**

8. On or before December 29, 2017, KCC established a fax telephone number dedicated to receiving claim forms and correspondence from the Class Members.

**Claim Forms**

9. The deadline for Class Members to file claims in this matter was February 27, 2018. To date, KCC has received one thousand nine hundred ninety seven (1,997) timely-filed claim forms and sixty three (63) late-filed claim forms. KCC has also received one (1) claim forms from an individual not identified in the Confidential Class List. Defendant has determined that this individual does not fall within the class definition and therefore should not be part of the Class.

**Request for Exclusion from Class**

10. The deadline for Class Members to request to be excluded from the class was February 27, 2018. As of the date of this declaration, KCC has received three (3) requests for exclusion. A list of the names of Class Members requesting to opt out of the Settlement has been attached hereto as Exhibit C.

///

3

**Objections to the Settlement**

11.     The deadline for Class Members to object to the settlement was February 27, 2018.  As of the date of this declaration, KCC has received zero (0) objections to the settlement.

**Preliminary Settlement Award Calculations**

12.     KCC has preliminarily calculated the Class Member settlement awards. These calculations are based on the assumptions that the gross settlement amount is $3,000,000.00, and from that amount, deductions are made for: (a) attorneys' fees and costs ($1,000,000.00); (b) named plaintiff awards ($1,000.00); (c) Reserve Fund ($100,000.00); (d) administration costs ($82,000.00) and (e) Employer Taxes ($117,264.05). The remaining amount ($1,699,735.95; the "Net Settlement Fund") will be allocated pursuant to the terms of the settlement to those Class Members preliminarily approved for payment.  Based upon the timely-filed claim forms, the average class member allocation is estimated to be $851.07. Including the late claim forms, the average class member allocation would be estimated to be $825.11.  Should the Court-awarded fees or costs differ than those shown above, or if the list of Class Members approved for payment and/or their class data changes, the estimated award allocation calculations will change accordingly.

**Administration Costs**

13.     KCC estimates its total cost of administration to be between the range of $74,621.99 and $82,021.99.  This amount includes costs to date as well as through the completion of this matter.

///

4

1    I declare under penalty of perjury that the foregoing is true and correct.

2  Executed this 20th day of March 2018 at Louisville, Kentucky.

5                                                        Zachary Cooley

DECLARATION OF ZACHARY COOLEY RE NOTICE PROCEDURES

# EXHIBIT A

## NOTICE OF PROPOSED SETTLEMENT OF CLASS AND
## COLLECTIVE ACTION LAWSUIT AND FAIRNESS HEARING

**TO:  ALL PERSONS EMPLOYED BY JPMORGAN CHASE BANK, N.A. AS MORTGAGE BANKERS AS DEFINED BELOW ON PAGE 2 AT ANY TIME DURING THE "COVERED PERIOD" DEFINED BELOW ON PAGE 2.**

Based on information in the records of JPMorgan Chase Bank, N.A. ("Chase") you were employed as a Mortgage Banker during the Covered Period and are entitled to participate in the proposed settlement of the case captioned Montero v. JPMorgan Chase & Co. et al., No.  14-cv-09053 (N.D. Ill.) (the "Lawsuit").  Accordingly, under the terms of the settlement, you may claim money under the Settlement as a Class Member and/or an FLSA Collective Member as defined below on page 2.

**1.      WHAT IS THE PURPOSE OF THIS NOTICE?**

**PLEASE READ THIS NOTICE CAREFULLY.**  It contains important information about your rights concerning the settlement of the Lawsuit.  If the Court approves the settlement, each Class Member will be bound by its terms unless he/she affirmatively opts-out of the Settlement.  Each FLSA Collective Member that opts-in to the Lawsuit/settlement by returning the Claim Form attached to this notice will also be bound by the terms of the settlement.  **WHETHER YOU ARE A CLASS MEMBER OR AN FLSA COLLECTIVE MEMBER, YOU WILL BE ELIGIBLE TO RECEIVE MONEY FROM THIS SETTLEMENT IF AND ONLY IF YOU RETURN THE ATTACHED CLAIM FORM TO THE CLAIMS ADMINISTRATOR ON OR BEFORE FEBRUARY 27, 2018.**

The Court has ordered that this Notice be sent to you to inform you of your rights under the Settlement Agreement resolving the Lawsuit.

**2.      WHAT IS THIS CASE ABOUT?**

In the Lawsuit, Plaintiff Cecilia Kolbeck (formerly Montero) asserted claims under the Fair Labor Standards Act ("FLSA") and Illinois state laws alleging that Chase and JP Morgan Chase & Co. (collectively, "JPMC") failed to timely pay overtime wages to Mortgage Bankers and did not properly account for incentive compensation when calculating Mortgage Bankers' overtime compensation.   Plaintiff also alleged that JPMC failed to pay Mortgage Bankers for all hours worked.

Chase denies these allegations and believes that all of its nonexempt Mortgage Bankers received all monies to which they were entitled and in a timely fashion.

The Parties have entered into this Settlement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.  The Court has not made any ruling on the merits of the Plaintiff's claims, and no party has prevailed in this action.

**3.      DEFINITIONS**

**Claimants:**  "Claimant" shall mean any Qualified Class Member (as defined below) and/or FLSA Collective Member who timely submits a valid and complete Claim Form, or a Qualified Class Member and/or FLSA Collective Member whose Claim Form is accepted in accordance with Section 2.4(e) of the parties' Settlement Agreement and Release, and who has not opted-out of the settlement.  Only Claimants are eligible to receive payment from the settlement fund.

**Class Counsel:**  "Class Counsel" shall mean Caffarelli & Associates Ltd., 224 S. Michigan Ave., Ste. 300, Chicago, IL 60604, which has been preliminarily approved by the Court as Counsel for the Class Members and FLSA Collective Members.

**Class Members:**  "Class" shall mean all persons employed by Chase as Mortgage Bankers at any time in Illinois from November 11, 2004 through the date of the Order Granting Preliminary Approval, except that any individual who timely submitted or submits a valid request for exclusion shall not be included in the Class.  A member of the Class is a "Class Member."

**Covered Period:** "Covered Period" shall mean: (a) for Mortgage Bankers who worked in Illinois locations, the period from November 11, 2004 through the date of the Order Granting Preliminary Approval; and (b) for Mortgage Bankers who worked in any other states, the period from April 5, 2014 through the date of the Order Granting Preliminary Approval.

**Final Order and Judgment.** "Final Order and Judgment" shall mean the final Order entered by the Court after the Fairness Hearing approving the settlement and entering Judgment pursuant to the parties' Settlement Agreement and Release and in accordance with Fed. R. Civ. P. 58.

**FLSA Collective Members:** "FLSA Collective" shall mean all persons employed by Chase as a Mortgage Banker at any time in the United States from April 5, 2014 through the date of the Order Granting Preliminary Approval. A member of the FLSA Collective is an "FLSA Collective Member."

**Mortgage Banker:** "Mortgage Banker" shall mean the following job titles as reflected in Chase's human resources information system during the Covered Period: MB Retail Mortgage Banker; MB Mortgage Banker RTL Out Mkt; MB BSC Mtg Banker; MB HE Mortgage Banker; MB CD Mortgage Banker; and MB Retail Mortgage Banker CPC. "Mortgage Banker" shall also mean, from October 30, 2017 to the end of the Covered Period, the following job titles as reflected in Chase's human resources information system: Home Lending Advisor HE; Home Lending Advisor CD; Home Lending Advisor BSC; Senior Home Lending Advisor.

**Named Plaintiff:** "Named Plaintiff" shall mean Cecilia Kolbeck (formerly Montero).

**Qualified Class Member.** "Qualified Class Member" shall mean a Class Member who does not opt out in the manner prescribed in Section 2.5 of the parties' Settlement Agreement and Release.

## 4.    HOW WILL MY SHARE OF THE SETTLEMENT FUND BE CALCULATED?

If the Settlement is given final approval by the Court, Defendants will pay up to a maximum of $3,000,000.00 in total settlement funds. If the Court also approves the payments set forth below, the following payments and expenses will be deducted from the $3,000,000.00 prior to distribution of the settlement funds to Claimants:

- • Attorneys' Fees and Costs: Class Counsel will apply to the Court for recovery of attorneys' fees and costs not to exceed one-third of the Settlement Fund.

- • Enhancement Award: If the Court approves such payment, an Enhancement Award will be paid to Named Plaintiff in the amount of One Thousand Dollars ($1,000).

- • Claims Administrator Costs: Class Counsel will apply to the Court for recovery of all costs of administration of this settlement.

- • Payroll taxes (both the employees' and employers' portions of taxes).

- • Reserve Fund: The parties have agreed to create a Reserve Fund of One-Hundred Thousand Dollars ($100,000) to make payments to Class Members and/or FLSA Collective Members whose Claim Forms are accepted, or whose allocation is increased, pursuant to Section 3.4 of the parties' Settlement Agreement and Release.

If the Court approves these payments, the remaining Settlement Fund (the "Net Settlement Fund") will be distributed as follows:

- • Each Claimant will receive a pro rata share of the Net Settlement Fund based on the amount of overtime compensation previously paid to the Claimant during the Covered Period in proportion to the total amount of overtime compensation previously paid to all Claimants during the Covered Period.

- • Irrespective of the amount of overtime paid to a particular Claimant, each Claimant shall receive a minimum payment of $100.00, provided that someone who is a member of both the Class and FLSA Collective shall only receive one minimum payment of $100.00 (if applicable).

- • The attached Claim Form contains an estimated amount of your minimum Individual Settlement Amount, which has been calculated based on Chase's records as to the amount of overtime compensation paid to you during the time that you worked as Mortgage Banker during the Covered Period. Chase's personnel records are presumed to be correct unless you submit documents proving otherwise.

**5.    HOW CAN I COLLECT MY SHARE OF THE SETTLEMENT?**

**In order to collect your share of the settlement, you must fill out a Claim Form.**  Attached to this Notice is a Claim Form which you must fill out and mail, postmarked on or before February 27, 2018, to:

Montero v. JPMorgan Chase & Co., et al. Claims Administrator

PO Box 404041

Louisville, KY 40233-4041

Tel: 866-653-4874

JPMC cannot and will not retaliate against you for participating in this Settlement and/or filing a Claim Form.

It is your responsibility to retain proof of timely mailing or submission of a Claim Form until receipt of your settlement payment.

If you move, please send the Claims Administrator your new address.  It is your responsibility alone to provide a forwarding address to the United States Post Office and your current address to the Claims Administrator.

If you are found eligible to participate in the Settlement, you should not expect to receive any payment until the Settlement is final, which will likely be several months away.

**6.    WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?**

Upon the entry of the Final Order and Judgment, if you are a Qualified Class Member, you, on your behalf, and on behalf of your respective current, former and future heirs, assigns, spouses, executors, administrators, agents, and attorneys, shall fully release and discharge JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and their present and former affiliates, divisions, subsidiaries, parents, predecessors (including Washington Mutual Bank and Washington Mutual, Inc. and their affiliated and related entities), any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them ("Releasees"), of and from any and all wage and hour claims arising from your employment as a Mortgage Banker, including statutory claims, whether known or unknown, in law or in equity, including, but not limited to, any and all wage and hour claims under Illinois law and other state and local law, that accrued or accrue prior to the date of the Order Granting Preliminary Approval, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime compensation, failure to properly calculate overtime compensation, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay wages or compensation or final wages or compensation, failure to reimburse for business expenses, making illegal deductions from wages or compensation, and/or failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, claims under the Employee Retirement Income Security Act ("ERISA") that are related or derivative of the claims released, other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law.

In addition, if you sign and return a Claim Form that is accepted pursuant to this Settlement, you, on your behalf, and on behalf of your respective current, former and future heirs, assigns, spouses, executors, administrators, agents, and attorneys, will fully release and discharge JPMC and Releasees from any and all federal, state, and local wage and hour claims arising from your employment as a Mortgage Banker, including statutory claims, whether known or unknown, in law or in equity, including FLSA claims, including but not limited to claims under 29 U.S.C. § 206, 207, 211(c) and 215(a), including liquidated damages, through the latter of the date of the Order Granting Preliminary Approval or the date the Claim Form is filed with the Court, and including claims under any legal theory for failure to pay minimum wage, failure to pay overtime compensation, failure to properly calculate overtime compensation, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay wages or compensation or final wages or compensation, failure to reimburse for business expenses, making illegal deductions from wages or compensation, failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, claims under ERISA that are related or derivative of the claims released, other penalties,

related tort and punitive and liquidated damages claims, and/or violations of any other federal, state, or local statutory and common law.

This Settlement is intended to include in its effect all claims identified above, including claims that you do not know or suspect to exist in your favor against Defendants or Releasees at the time of the release. You shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits you may otherwise have had relating to the claims identified above.

The claims described above that are being released shall be called the Released Claims.

**7.     AS A CLASS MEMBER, HOW DO I OPT OUT OF THE SETTLEMENT CLASS?**

If you are a Class Member who was employed in Illinois, you have the option of opting-out of the Settlement Agreement if you do not want to participate in the Settlement or be bound by the release of claims described above. To opt-out of the Settlement Agreement you must do so by February 27, 2018. If you do not opt out, you will be bound by the terms of the Settlement Agreement. To opt out, you must mail a signed letter which specifically states, "I ELECT TO EXCLUDE MYSELF FROM THE SETTLEMENT in Montero et al. v. J.P. Morgan Chase & Co. et al." postmarked no later than February 27, 2018. You must include your name, address and telephone number in the letter. If you choose to opt out, send your letter to:

Montero v. JPMorgan Chase & Co., et al. Claims Administrator
PO Box 404041
Louisville, KY 40233-4041
Tel: 866-653-4874

If you are an FLSA Collective Member who was not employed in Illinois as a Mortgage Banker during the Covered Period, you will not have any claims released unless you sign and return a Claims Form. Accordingly, if you do not wish to participate in the Settlement, you do not need to opt-out, simply do not submit a Claims Form.

**8.     WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?**

If you are a Class Member and have not opted out of the Settlement, and if you wish to present objections to the proposed settlement at the Fairness Hearing, you must first do so in writing by filing your written objection with the United States District Court for the Northern District of Illinois at 219 South Dearborn Street, Chicago, IL 60604, as well as mailing a copy of your written objection to the Class Administrator at:

Montero v. JPMorgan Chase & Co., et al. Claims Administrator
PO Box 404041
Louisville, KY 40233-4041
Tel: 866-653-4874

Written objections must be filed with the Court and postmarked no later than February 27, 2018, contain your name and address, be signed by you, and include reference to "Montero v. J.P. Morgan Chase & Co. et al., No. 14-cv-09053." You are not required to submit an objection. If you opt-out of the settlement, you have no standing to object to the settlement.

**9.     WHEN IS THE FAIRNESS HEARING?**

A hearing before the Honorable Susan E. Cox will be held on April 25, 2018 at 10:00 am at the Everett McKinley Dirksen United States Court for the Northern District of Illinois, 219 South Dearborn Street, Courtroom 1025, Chicago, IL 60604 (the "Fairness Hearing"). The purpose of this hearing will be for the Court to determine whether the Settlement is fair, adequate, and reasonable and should be approved by the Court. The Court will take into account any comments or objections filed in accordance with the procedures described above.

**10.     HOW CAN I EXAMINE COURT RECORDS?**

This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings. For more detailed information, you are advised to refer to the underlying documents and papers on file with the Court. Additionally, you can visit www.ChaseMortgageBankerwageSettlement.com, which contains relevant case documents, important dates, and frequently asked questions; or you can contact the Claims Administrator at the address/phone number listed above.

Montero, et al. v. J.P. Morgan
Chase & Co., et al. Claims Administrator
PO Box 404041
Louisville, KY 40233-4041



## JMO

## «Barcode»
Postal Service: Please do not mark barcode

Claim#: JMO-«Claim8»-«CkDig»
«First1» «Last1»
«Addr1» «Addr2»
«City», «St»  «Zip»
«Country»

*CECILIA MONTERO, ET AL. V.*
*JPMORGAN CHASE & CO., ET AL.,*
*UNITED STATES DISTRICT COURT,*
*NORTHERN DISTRICT OF ILLINOIS*

Case No. *14-CV-09053*

**Must Be Postmarked**
**No Later Than**
**February 27, 2018**

## INDIVIDUAL CLASS AND/OR FLSA COLLECTIVE MEMBER CLAIM FORM

### — CHANGE OF ADDRESS (ONLY IF DIFFERENT FROM ABOVE) —

Primary Address

Primary Address Continued

City                                State      Zip Code

Foreign Province        Foreign Postal Code        Foreign Country Name/Abbreviation

**TO SHARE IN THE SETTLEMENT, YOU MUST COMPLETE, SIGN AND RETURN THIS CLAIM FORM.**
**THE CLAIM FORM MUST BE POSTMARKED NO LATER THAN FEBRUARY 27, 2018**

**MAIL TO:**
**Montero, et al. v. J.P. Morgan Chase & Co., et al. Claims Administrator**
**PO Box 404041**
**Louisville, KY 40233-4041**
**Tel.: 866-653-4874**
**Fax: 866-653-4875**

The records of JPMorgan Chase Bank, N.A ("Chase") indicate that you were employed by Chase in a covered Mortgage Banker ("MB") position during the Covered Period, as defined in the Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Notice of Settlement"), and that you were paid a total of $<<OT Compensation>> in overtime compensation as an MB during the Covered Period.  Based on this, your estimated minimum Individual Settlement Amount is $<<EstSet>>.

By signing and returning this form, you are claiming your Individual Settlement Amount and consenting to join the above-captioned lawsuit brought to recover wages under the Fair Labor Standards Act and state law.

By signing and returning this form, you acknowledge that you are releasing the Released Claims against Defendants, as set forth in the Notice of Settlement.  You agree to be bound by this Settlement and not to sue or otherwise make a claim against any of the Releasees as to any of the Released Claims.

Signature: _____          Dated: _____

Daytime Telephone Number

Evening Telephone Number

FOR CLAIMS
PROCESSING
ONLY            OB          CB

○ DOC        ○ RED
○ LC          ○ A
○ REV         ○ B

1

# EXHIBIT B

## SECOND AND FINAL NOTICE

Dear Settlement Class Member:

On December 29, 2017, we sent you a Notice of Settlement of Class and Collective Action and a Claim Form for Montero, et al. v. JPMorgan Chase & Co., et al., filed in the United States District Court, Northern District of Illinois, Case No. 1:14-cv-09053.

Our records show you have not submitted either a Claim Form or a request for exclusion. If you wish to make a claim in this settlement, you must postmark your Claim Form by **no later than February 27, 2018.**

If you have not received your Claim Form or have misplaced it, a copy may be obtained by calling the Claims Administrator toll-free at 866-653-4874.

Sincerely,
Claims Administrator

Montero v. JPMorgan Chase & Co., et al.
Claims Administrator
PO Box 404041
Louisville, KY 40233-4041

# REMINDER NOTICE

See other side for details

**JMO**

2D

Postal Service: Please Do Not Mark Barcode

JMO-<<Claim8>>-<<CkDig>>

<<FName>> <<LName>>
<<Addr1>> <<Addr2>>
<<City>>, <<State>> <<Zip>>

# EXHIBIT C

Montero v JPMorgan Chase Bank

Exclusion List


Fidel Godines

Sally Raidan

Julieann West